<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                            :
ASTOR CHOCOLATE CORP.,          :
                                            :
                    Plaintiff,          :
        v.                                 :          Civil Action No. 3:16-cv-5010-BRM-TJB
                                            :
                                            :
MATTHEW MCCALL,                    :
                                            :          **OPINION**
                    Defendant.          :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Matthew McCall's ("McCall") Motion to Change Venue

(ECF No. 10)[1] and Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF

No. 11). Plaintiff Astor Chocolate Corp. ("Astor") opposed these motions (ECF Nos. 15, 16) and,

pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on the motions

on April 25, 2017.[2] For the reasons set forth below and for good cause having been shown,

McCall's motions are **DENIED**.

**I. FACTUAL BACKGROUND**[3]

---

[1] Lindt & Sprungli (USA) ("Lindt"), originally a defendant in this matter, filed this motion on behalf of itself and McCall but was voluntarily dismissed from the case on or about November 28, 2016. McCall maintains the case should be transferred.

[2] During oral argument, the Court reserved its decision and provided the parties until May 1, 2017, to advise whether a settlement conference would help the parties move forward. Astor accepted this Court's offer while McCall declined.

[3] For the purposes of the Motion to Dismiss only, and exclusive of the choice of law analysis, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

McCall was employed with Astor in New Jersey as Director of Product Development, Package Engineer and was allegedly responsible for product development, design, production concept, and recruitment. (Compl. (ECF No. 1-1) ¶¶ 5, 16.) McCall and Astor executed a Non-Disclosure & Non-Compete Agreement ("Agreement") on October 12, 2010, while in New Jersey. (*Id.* ¶¶ 4, 6, 9, and Ex. A.) The Agreement provided McCall would not: (1) "disclose any [confidential and proprietary information[4]] to any party not related to [Astor] without [Astor]'s prior written approval or as may be required by law"; (2) "copy, disclose, disseminate, share, utilize, or otherwise transmit information regarding products that [Astor] manufactures, retails, or markets, to any person, company or entity, other than those people, companies or entities, that are required to obtain certain information in the performance of [McCall's] job duties"; and (3) "become employed for a period of three years after termination of [McCall's] employment with any company, with any business, or entity that is a competitor of [Astor] or that conducts business in the chocolate industry in any of the geographic regions served by [Astor]." (ECF No. 1-1 at Ex. A 1-2.)

On or about April 23, 2015, McCall resigned from Astor and thereafter became and remains employed by Lindt in New Hampshire as a Graphic Design Manager. (ECF No. 1-1 ¶¶ 16-17; McCall Aff. (ECF No. 10-3) ¶ 4.) On or about April 4, 2016, Astor, through its counsel, sent cease and desist letters to McCall and Lindt. (ECF No. 1-1 at Exs. B, C.)

---

[4] According to the Agreement:

> Confidential and proprietary information includes formulas, billing, pricing, clients, vendors, memoranda, notes, reports, correspondence or other documents that [McCall] review[s]. This also includes any documents or information that [McCall] prepare[s] on behalf of [Astor] during the course of [his] job duties. This also includes any information relating to any client of [Astor] that [McCall] become[s] aware of in the course of [his] job duties.

(ECF No. 1-1 at Ex. A ¶ 1(A).)

## II. PROCEDURAL BACKGROUND

On June 17, 2016, Astor filed a complaint ("Complaint") in New Jersey Superior Court, Ocean County, Docket Number L-1649-16, against Lindt and McCall (collectively, "Defendants") alleging: (1) breach of contract against McCall; (2) breach of the covenant of good faith and fair dealing against McCall; (3) breach of duty of loyalty against McCall; (4) tortious interference with contract against Lindt; (5) unfair competition against Defendants; (6) unjust enrichment against Defendants; (7) misappropriation of Astor's confidential and proprietary information against Defendants; (8) violation of the New Jersey Computer Related Offenses Act ("NJCROA"), N.J.S.A. § 2A:38A-1, *et seq.* against McCall; and (9) conspiracy against Defendants. (*See* ECF No. 1-1.) On August 16, 2016, Lindt and McCall removed the case from New Jersey Superior Court to this Court on the basis of diversity. (Not. of Removal (ECF No. 1) ¶¶ 5-14.) Following the filing of the pending motions, Lindt was voluntarily dismissed from the litigation. (Not. and Order of Voluntary Dismissal (ECF Nos. 14, 22).)

## III. MOTION TO CHANGE VENUE

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

In deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, "the burden of establishing the

need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Court must consider three factors when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive, and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80.

The private interests a court should consider include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879).

The public interests a court should consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citing *Jumara*, 55 F.3d at 879-80).

Both parties analyze various private and public factors. McCall argues venue in New Hampshire is appropriate because "1) the heart of the alleged misconduct occurred in New Hampshire; 2) most likely witnesses and documents are located in New Hampshire; and 3) Astor is better able to pursue this litigation in New Hampshire than McCall is to defend it in New Jersey." (McCall's Reply in Further Supp. of Mot. to Change Venue (ECF No. 18) at 2.) Plaintiff argues New Jersey is the proper venue because the private and public factors to be considered by the court "militate strongly against transfer and demonstrate that the District of New Jersey is the proper venue for the convenience of the parties and witnesses and in the interests of justice." (ECF No. 16 at 3.)

**A. Personal Jurisdiction**

As an initial matter, this case can only be transferred "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, the transferee court must have personal jurisdiction over McCall under 28 U.S.C. § 1391. McCall concedes he has been a New Hampshire resident since November 1, 2015 (ECF No. 10-3 ¶ 4), before the Complaint was filed in Superior Court (ECF No. 1-1) and therefore, the New Hampshire District Court has personal jurisdiction over him. Therefore, the case could have been originally filed in New Hampshire and the Court may proceed with its analysis.

**B. Private Factors**

**1. Plaintiff's forum preference, defendant's preference, and convenience of the parties**

The parties' preferences and convenience in this action inherently compete. Both parties have indicated their preference for their most convenient state – Astor by way of filing in New Jersey and McCall by moving to transfer to New Hampshire. However, with respect to preference, deference is given to Astor as the plaintiff. *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*,

825 F. Supp. 671, 681 (D.N.J. 1993) ("[T]he plaintiff's choice of forum is of paramount concern in deciding a motion to transfer venue."). Moreover, litigation is, itself, inconvenient and "substituting one party's inconvenience for another's hardly appears a substantial reason for granting this motion." *Park Inn Int'l, LLC*, 105 F. Supp. 2d at 378. Therefore, this factor weighs in favor of denying the Motion to Transfer.

### 2. Whether the claim arose elsewhere

McCall argues the claim arose in New Hampshire because he took the job with Lindt and violated the terms of the Agreement in New Hampshire. Astor contends the claim arose in New Jersey because: (1) McCall was an employee of Astor in New Jersey; (2) the Agreement, which was a condition of his New Jersey employment, was executed and took effect in New Jersey; and (3) McCall accessed confidential information during his employment in New Jersey. (ECF No. 16 at 4-5.) The Court does not find either argument persuasive.

Likewise, the Court is not persuaded by McCall's argument that less deference should be given to Astor's choice of forum. *Nat'l Micrographics Sys., Inc.*, 825 F. Supp. at 682 (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993)). Even assuming, *arguendo*, the claim arose in New Hampshire and the Court gave less deference to Astor's choice of forum, the parties' preferences would, at best, balance each other out. Therefore, at this point in the evaluation, the Court still finds New Jersey to be the appropriate venue because McCall has the burden to show transfer is warranted. *Jumara*, 55 F.3d at 879.

Accordingly, this factor weighs in favor of denying the Motion to Transfer.

### 3. Convenience of the witnesses

McCall argues the convenience of the parties and witnesses weighs in favor of New Hampshire. Specifically, McCall posits: (1) Lindt (now a witness) is located in New Hampshire;

(2) "it will be essential to understand Lindt's operations and McCall's relationship with the Lindt organization including his duties and responsibilities"; and (3) "[t]hose knowledgeable about McCall's responsibilities at Lindt, his direct supervisors and other potential witnesses, including McCall himself, are resident in New Hampshire." (ECF No. 10 at 16-17.) Most notably, McCall argues New Jersey would not have subpoena power over Lindt for trial. (ECF No. 10 at 17 and ECF No. 18 at 5-6.)

Astor contends it does not anticipate calling witnesses from New Hampshire at trial, nor can McCall speculate as to which witnesses Astor will require. Specifically, Astor states:

> Astor anticipates that the witnesses in this matter will be limited to Defendant McCall, Astor's Human Resources representative (to testify about [McCall]'s employment and the Agreement), and a representative from Astor (to testify on damages and as to McCall's misappropriation of Astor's confidential information). The witnesses Astor can currently identify with certainty, besides McCall, whose convenience was analyzed in the preceding factor, are located in New Jersey.

(ECF No. 16 at 6.)

Indeed, McCall does not reference any witnesses with specificity, referring broadly to "all key witnesses," "[McCall's] direct supervisors and other potential witnesses," "witnesses who are no longer employed by Lindt," "Lindt employees who would speak to McCall's job duties, Lindt's complete lack of interest and non-reliance on Astor business information, and McCall's conduct as an employee," and "Lindt witnesses with knowledge of McCall's alleged conduct." (ECF No. 10-1 at 16-17 and ECF No. 18 at 5-6.) These general allegations of inconvenience to such a wide range of unspecified witnesses are insufficient to tilt the balance in favor of transfer to New Hampshire. *See Austin v. Johns-Manville Corp.*, 524 F. Supp. 1166, 1169 (E.D. Pa. 1981) (citing 15 Wright, Miller & Cooper, Federal Practice & Procedure, § 3851 at 270-71 (1976)) ("The movants here have not stated with specificity the witnesses who will be inconvenienced by a denial

of their motions . . . ."); *Stop-A-Flat Corp. v. Electra Start of Mich., Inc.*, 507 F. Supp. 647, 652 (E.D. Pa. 1981) ("[W]hile it may be true that most of the potential witnesses for this lawsuit reside in that forum, the defendants have failed to identify even one of those witnesses. The simple assertion that the necessary witnesses probably reside in a certain forum does not justify the grant of a § 1404(a) motion.").

Accordingly, this factor weighs in favor of denying the Motion to Transfer.

### 4. Location of books and records

McCall concedes "electronically available documents makes [sic] the physical location of the documents less important in a venue analysis" (ECF No. 10 at 26) and this Court agrees. *See MaxLite, Inc. v. ATG Elecs., Inc.*, 2016 WL 3457220, at *16 ("Indeed, in the age of electronic discovery, it is hard to imagine that [defendant] cannot produce relevant documentary evidence in New Jersey, and it certainly has not claimed (much less shown) that it cannot do so."). Therefore, this factor weighs in favor of denying the Motion to Transfer.

### B. Public Factors

### 1. Enforceability of the judgment

McCall argues Astor's request for injunctive relief would be easier to enforce in New Hampshire because the conduct is occurring there and "only the district court rendering the judgment has to power to enforce." (ECF No. 10-1 at 20 (citing *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970-71 (11th Cir. 2012)).) Astor claims this factor is neutral because "a judgment in either forum could be enforced through appropriate procedures in the other forum." (ECF No. 16 at 9 (citing *Danka Funding, L.L.C.*, 21 F. Supp. 2d at 475 ("Any judgment awarded by this Court at trial, if any, would be easily domesticated in Georgia."))).) The Court agrees and is not

persuaded by McCall's argument that New Hampshire is the more appropriately venue. Therefore, this factor weighs in favor of denying the Motion to Transfer.

### 2. Practical considerations

McCall contends practical considerations weigh in favor of transfer to New Hampshire because the majority of the witnesses are located there, and transfer would make the trial easier, more expeditious, and less expensive. (ECF No. 10 at 20.) The Court already found the private interest factor regarding convenience of the witnesses weighs in favor of denying transfer. With respect to the public interest factor related to practical considerations, the Court may consider potential delays caused by witnesses needing to travel. *See Carter v. U.S.*, No. 10-2927, 2010 WL 3322704, at *3 (E.D. Pa. Aug. 20, 2010); *Colon v. Pitney Bowes Corp.*, No. 06-5016, 2007 WL 496875, at *4 (D.N.J. Feb. 8, 2007). At this point, McCall has not sufficiently identified witnesses for this Court to determine whether delays would be caused by litigating the case in New Jersey. Because McCall has the burden in this motion, the Court finds this factor weighs in favor of denying the Motion to Transfer.

### 3. Relative administrative difficulty resulting from court congestion

McCall states it "will not assume that either New Jersey or New Hampshire's docket is more or less congested than the other." (ECF No. 10-1 at 24.) Indeed, both states dispose of cases at approximately the same rate. *See* United States Courts, *Statistical Tables For The Federal Judiciary* tbl.C-5 (June 30, 2016), http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2016/06/30 (noting the median time interval for disposition of cases by trial is 29.8 months and 33.2 months in New Hampshire and New Jersey, respectively). Therefore, this factor weighs in favor of denying the Motion to Transfer.

### 4. Public policy and local interest in deciding local controversies

McCall argues the claims at issue arose in New Hampshire and therefore New Hampshire has a local interest in deciding the case. However, the Court already concluded the private interest factor related to this public interest factor to be neutral. Because the Agreement was executed in New Jersey and Astor raises a New Jersey-specific claim, there is no doubt New Jersey has an interest in the dispute. Therefore, this factor weighs in favor of denying the Motion to Transfer.

### 5. Familiarity of the trial judge with the applicable state law

Undoubtedly, "federal district courts are regularly called upon to interpret laws of jurisdictions outside the states in which they sit." *Yocham v. Novartis Pharma. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008). To the extent McCall argues a conflict of laws exists between New Hampshire and New Jersey, this Court is fully capable of familiarizing itself with and applying the laws of either state. Therefore, this factor weighs in favor of denying the motion to transfer.

Taking into account the private and public interest factors, the Court finds McCall has not met his burden in demonstrating the motion should be transferred to New Hampshire. Accordingly, the Motion to Transfer is **DENIED.**

## IV. MOTION TO DISMISS

### A. Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*,

478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Choice-of-Law**

Astor's Complaint is based entirely in state law. Therefore, in order to assess the merits of Astor's claims, the Court must first decide whether New Jersey or New Hampshire law applies as determined by New Jersey's choice-of-law principles. *Maniscalco v. Brother Int'l (USA) Corp.*,

709 F.3d 202, 206 (3d Cir. 2013); *Spence-Parker v. Del. River & Bay Auth.*, 616 F. Supp. 2d 509, 523 (D.N.J. 2009).

New Jersey applies a two-part test. The first part of the choice-of-law inquiry is to determine whether or not an actual conflict exists between the laws of the potential forums. *Maniscalco*, 709 F.3d at 206 (citing *Lebegern v. Forman*, 471 F.3d 424, 429–30 (3d Cir. 2006); *P.V. v. Camp Jaycee*, 197 N.J. 132, 141-43 (2008)). The New Jersey Supreme Court specified the first step is evaluated "by examining the substance of the potentially applicable laws to determine whether 'there is distinction' between them . . . . If not, there is no choice-of-law issue to be resolved." *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern*, 471 F.3d at 430). If a conflict exists, the Court proceeds to the second part of the test and "determine[s] which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144). In other words, "the Court determines 'which state has the most meaningful connections with and interests in the transaction and the parties.'" *Spence-Parker*, 616 F. Supp. 2d at 523 (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995)).

McCall's argument in support of dismissal is two-fold. First, McCall presupposes a conflict exists and argues New Hampshire has the most significant relationship with the overall case[5] because "1) New Hampshire is where the alleged conduct occurred; 2) New Hampshire is the locus of the alleged relationship between Lindt and McCall; and 3) New Hampshire is the location of both Defendants[6]." (McCall's Br. in Supp. of Dismissal (ECF No. 11-1) at 8.) Second, "[r]egardless of the applicable law, Astor's Complaint fails for failure to state a claim upon which relief can be granted and must be dismissed." (*Id.*)

---

[5] McCall did not conduct a claim-by-claim analysis of each state's laws.
[6] McCall is the only remaining defendant. McCall's Motion to Dismiss was filed prior to Lindt's dismissal.

Astor argues a choice-of-law determination is improper at this early juncture in the litigation and, even so, McCall "utterly fails to consider whether there is a conflict between New Jersey and New Hampshire law as to each claim, which is the first and necessary step in the conflict analysis. As such, his request for application of New Hampshire law fails as a matter of law." (ECF No. 15 at 4.) Additionally, Astor argues New Jersey law applies to each claim and that each claim is adequately pled.

As required, the Court will review the sufficiency of the allegation in each of Astor's claims and, where possible, determine which state's law applies.

### C. Plaintiff's Claims

#### 1. Count One – Breach of Contract

McCall effectively concedes no conflict exists between New Jersey and New Hampshire law (*see* ECF No. 11-1 at 8 (citing the same four elements required to bring a claim in either state)), therefore, no choice-of-law analysis is required and New Jersey law applies. *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern*, 471 F.3d at 430).

"A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted).

McCall claims Astor failed to plead a breach of the Agreement because the Complaint does not specify what confidential information was disclosed. He also argues damages are not sufficiently alleged. The Court disagrees. "Confidential informational" is defined in the Agreement and damages are, at minimum, $75,000, which McCall conceded by removing the case to federal court. Even so, general damages need not be specifically stated. Fed. R. Civ. P. 8(a); *Tiburon*

*Lockers v. Fletcher*, Civ. A. No. 15-6970, 2016 WL 4487852 at *15 (D.N.J. Aug. 24, 2016) (quoting *Delzotti v. Morris*, Civ. A. No. 14-7223, 2015 WL 5306215 at *8 (D.N.J. Sept, 10, 2015)). For these reasons, McCall's Motion to Dismiss Count One is **DENIED**.

### 2. Count Two – Breach of Covenant of Good Faith and Fair Dealing

McCall cites to both New Hampshire and New Jersey law for the proposition that this cause of action does not exist where the parties have an express and clear contract, again, in effect, conceding no conflict of law exists. (*See* ECF No. 11-1 at 10 (citing *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 312 (D.N.H. 2012); *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271–72 (3d Cir. 2004).) Accordingly, no choice-of-law analysis is required and New Jersey law applies.

Under New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted); *see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224–25 (2005); *R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co.*, 168 N.J. 255, 276 (2001). "A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hill Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 1182 N.J. 210, 226 (2005)); *Graco, Inc. v. PMC Global, Inc.*, Civ. A. No. 08-1304, 2009 WL 904010 (D.N.J. 2009) ("A defendant who acts with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.").

Astor contends it sufficiently pled this cause of action by asserting the following in its opposition:

> (a) McCall is bound by a non-compete agreement; (b) that [A]greement prohibited him from working for a direct competitor for three years; (c) that agreement prohibited him from misappropriating Astor's confidential information; (d) McCall left Astor and began working for a direct competitor within the three year period; (e) McCall misappropriated Astor [sic] confidential information.

(ECF No. 15 at 8 (citing ECF No. 1-1 ¶¶ 9-22, 60-61).)

In pleading McCall misappropriated confidential information and shared it with Lindt in violation of the Agreement, Astor adequately asserts McCall acted with ill motives to the detriment of Astor's reasonable expectations. (*See* ECF No. 1-1 ¶¶ 20-22.) For these reasons, McCall's Motion to Dismiss Count Two is **DENIED**.

### 3. Count Three – Breach of Duty of Loyalty

McCall contends that, because New Hampshire law applies, this cause of action is barred because it is not recognized by New Hampshire common law or the New Hampshire Uniform Trade Secret Act ("NHUTSA"). (ECF No. 11-1 at 12 (citing *White v. Ransmeier & Spellman*, 950 F. Supp. 39, 43 (D.N.H. 1996); *Wilcox Indus. Corp.*, 870 F. Supp. 2d at 303).) Even under New Jersey law, McCall argues the cause of action does not survive because "[a]n employee owes a duty of loyalty to his employer only during the period of his employment." (*Id.* at 13 (citing *Vibra-Tech Eng'rs, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012)).)

Because a conflict exists in the applicable laws of the potential forums, a choice-of-law analysis is necessary, and the Court must proceed to the second part of the test to "determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144).

Unsurprisingly, Astor argues New Jersey has the most significant relationship to the claim because: (1) Astor is located, is incorporated, and has its place of business in New Jersey; (2) the injury occurred in New Jersey ("McCall misappropriated Astor's confidential information in New Jersey"); and (3) "McCall was a New Jersey resident when he was employed by Astor and his duty of loyalty to Astor existed." (ECF No. 15 at 9.)

McCall does not specifically argue this portion of the choice-of-law analysis. Instead, in arguing the claim would fail under New Jersey law, McCall states:

> The only misconduct alleged by [Astor] while McCall was still employed with [Astor] is that he sent [Astor]'s 'confidential information' to another one of his own email addresses. . . . Any misconduct in which [Astor] has alleged McCall engaged after his employment with Plaintiff cannot constitute a breach of loyalty as a matter of law.

(ECF No. 11-1 at 14.)

The parties' arguments make clear that any determination as to which forum has the most substantial relationship with this claim would be premature. Based on the purported differences in the states' laws, the Court would be required to evaluate the specific alleged breaches to determine when and where they occurred. This evaluation is not possible on the present record, which alleges that confidential information was shared and/or misappropriated both during McCall's employment with Astor and after. (ECF No. 1-1 ¶¶ 12, 22.) Discovery is warranted on this issue and McCall may move for summary judgment as to this choice-of-law question with evidence sufficient for the Court's determination as to whether New Jersey or New Hampshire law governs this claim. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011) (noting that, absent a full factual record, "it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place" (quoting *In re*

*Samsung DLP Television Class Action Litig.*, Civ. No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009))). For these reasons, McCall's Motion to Dismiss Count Three is **DENIED**.

### 4. Count Four – Tortious Interference with McCall's Contract Against Lindt

Although not raised by McCall's motion, the Court notes, by virtue of Lindt's dismissal, this Count has been dismissed from the Complaint.

### 5. Count Five – Unfair Competition

McCall, by joining and incorporating Lindt's argument on this point into its own motion, argues that, like the duty of loyalty (Count Three), this Count is preempted in New Hampshire by the NHUTSA, whereas the claim exists in New Jersey. (Lindt Mot. to Dismiss (ECF No. 9-1) at 18-20.) Because a conflict exists, a choice-of-law analysis is necessary, and the Court must proceed to the second part of the test to "determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144).

McCall, through Lindt's motion, argues New Hampshire has the most significant relationship to this claim because: (1) it is where the alleged interference took place, and (2) the alleged competition, which forms the basis of the cause of action, is in New Hampshire. (ECF No. 9-1 at 20.) Astor argues New Jersey has the most significant relationship to the claim because:

> [1] Astor's injury occurred in New Jersey. [2] Astor is incorporated in New Jersey and McCall was a resident of New Jersey when he misappropriated Astor's confidential information. [3] McCall worked for Astor in New Jersey, making the New Jersey the center of their relationship. [4] Finally, McCall misappropriated the confidential information, leading to the unfair competition in New Jersey. Whether he sent that information to Lindt while still in New Jersey or once he moved to New Hampshire is a factual issue that will need to be explored in the discovery.

(ECF No. 15 at 11.)

The Court agrees with Astor that factual issues exist. Accordingly, the record is insufficient for this Court to make a choice-of-law determination at this time. The parties may move for summary judgment as to choice-of-law at a later date with evidence sufficient for the Court to determine whether New Jersey or New Hampshire law governs this claim. *See Snyder*, 792 F. Supp. 2d at 718 (quoting *In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *3). For these reasons, McCall's Motion to Dismiss Count Five is **DENIED**.

### 6. Count Six – Unjust Enrichment

Several courts in this district have held, and Astor argues, no actual, material conflict exists among the laws of different states with respect to unjust enrichment. *Snyder*, 792 F. Supp. 2d at 723 (citing *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009)). McCall, through Lindt, argues Astor's claim, as applied to the facts and pleadings of this case, brings the claim within the NHUTSA which preempts it, creating a conflict in the forums' laws. (ECF No. 9-1 at 22-23.) Specifically, McCall argues the claim is preempted "[i]n the absence of an allegation of unjust enrichment independent of misappropriation." *Id.* (citing *Wilcox*, 870 F. Supp. 2d at 308.)

McCall's argument is misplaced, because Astor does, in fact, assert a separate cause of action for misappropriation in Count Seven. Accordingly, no substantive conflict exists between the forums' laws, *see Snyder*, 792 F. Supp. 2d at 723, and therefore, New Jersey law applies to this claim.

To state a claim for unjust enrichment in New Jersey, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit [sic] (3) under circumstances that would make it unjust for defendant to retain benefit [sic] without paying for it." *Id.* at 723-24 (quoting *In re*

*Ford Motor Co. E–350 Van Prods. Liab. Litig.*, Civ. No. 03–4558, 2008 WL 4126264, at *21, (D.N.J. Sept. 3, 2008)).

Astor alleges McCall was unjustly enriched at Astor's expense as set forth in the allegations throughout the Complaint, which include allegations that McCall had access to Astor's confidential and proprietary information, accessed it and sent it to his personal email during his employment, "misappropriated this confidential information by use of his Astor email address and/or by use of an Astor computer," and "provided such confidential information to Lindt." (ECF No. 1-1 ¶¶ 20-22, 53.) Reading these allegations in a light most favorable to Astor, the Court finds Astor sufficiently described circumstances that would, if proven, make it unjust for McCall to retain the benefit of using the confidential information without paying for it. Accordingly, for these reasons, McCall's Motion to Dismiss Count Six is **DENIED**.

### 7. Count Seven – Misappropriation of Astor's Confidential Information

McCall, through Lindt, argues this cause of action is again preempted by the NHUTSA, creating a conflict between the states' laws. Having already found the record to be insufficient with respect to where and when the confidential information was allegedly disclosed, the Court is unable to determine which state has the most significant relationship with the claim based on the current record. *See Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 314 (D.N.J. 2013) ("The key to determining the misuse of the information is the relationship of the parties at the time of disclosure, and its intended use." (quoting *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 295 (Law Div. 1995))). Therefore, the Court cannot make a choice-of-law determination at this time. The parties may move for summary judgment as to choice-of-law at a later date with evidence sufficient for the Court to determine whether New Jersey or New Hampshire law governs. *See Snyder*, 792

F. Supp. 2d at 718 (quoting *In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *3). For these reasons, McCall's Motion to Dismiss Count Seven is **DENIED**.

### 8. Count Eight – Violation of the NJCROA

Astor argues New Jersey law applies to this New Jersey cause of action because "[n]o actual conflict exists between New Jersey law and New Hampshire law, as New Hampshire has no statute or cause of action equivalent to the [NJCROA]." (ECF No. 15 at 19.) McCall seems to argue, in passing, that Astor cannot bring a claim under the NJCROA because New Hampshire law applies to all of Astor's claims. (ECF No. 11-1 at 15 ("[T]he NJCROA is a New Jersey statute, and as discussed above, Plaintiff's claims against McCall are governed by the laws of New Hampshire.").)

New Jersey law applies to this cause of action, and the Court need not enter into a choice-of-law analysis because no New Hampshire law exists with which to compare the NJCROA. *See Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern*, 471 F.3d at 430). The NJCROA provides a cause of action against a person for

> a. The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;
> b. The purposeful or knowing, and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;
> c. The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;
> d. The purposeful or knowing, and unauthorized altering, accessing, tampering with, obtaining, intercepting, damaging or destroying of a financial instrument; or
> e. The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.

N.J.S.A. § 2A:38A-3.

Astor alleges facts sufficient to support a NJCROA claim. Specifically, it alleges McCall accessed Astor's computer and took, "without authorization" and in a "reckless[]" manner, "Astor's branding, product listings, product costs, pricing lists, profit margins, and other data" and distributed the information to Lindt. (ECF No. 1-1 ¶¶ 20-22, 60-61.) At minimum, Astor sets forth a cause of action under N.J.S.A. § 2A:38-3(e). Accordingly, for these reasons, McCall's Motion to Dismiss Count Eight is **DENIED**.

### 9. Count Nine – Conspiracy

Astor voluntarily dismissed Count Nine (ECF No. 15 at 6 and ECF No. 22), therefore, McCall's Motion to Dismiss this Count is **DENIED AS MOOT**.

## IV. CONCLUSION

For the reasons set forth above, McCall's Motion to Change Venue is **DENIED**. McCall's Motion to Dismiss is **DENIED** as to Counts One, Two, Six, and Eight after a finding that New Jersey law applies to these causes of action; **DENIED** as to Counts Three, Five, and Seven without a determination as to choice-of-law; and **DENIED AS MOOT** as to Count Nine. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 31, 2017